**Joe David TONEY et al., Plaintiffs,**

v.

**Ronald REAGAN et al., Defendants.**

**No. 7188.**

United States District Court,
N. D. California.

March 29, 1971.

As Amended April 28, 1971.

Mark Himelstein, of Penrod & Himelstein, San Francisco, Cal., for plaintiffs.

Elizabeth Palmer, State Atty. Gen's. Office, San Francisco, Cal., and Norman Epstein, Gen. Counsel, Cal. State Colleges, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

Plaintiffs, members of the faculty of Fresno State College, bring this suit under the Civil Rights Act, 42 U.S.C. § 1983, against the Trustees of the California State Colleges, the Chancellor of the State College System and the President of the College seeking declaratory and injunctive relief.

On November 25, 1970, plaintiffs Toney, Dutton, Frost, Hall and Mabey, all probationary (non-tenured) employees, were notified by the President of the College that they were not being offered appointments for the 1971–1972 academic year. On the same date plaintiff Ruhl, also a probationary employee, was offered an appointment for the academic year 1971–1972 but was informed that this appointment would be his terminal year appointment.

Probationary faculty members are appointed on a yearly basis. Each such faculty member is evaluated during each year of probationary employment by his peers—his department chairman, the dean of his school and the Vice President and the President of the College. The President of the College makes the decision whether to offer him an appointment for the following academic year. If the member is appointed for the following year, the process is again repeated and he may be appointed for the next year. This may go on for four probationary years. Only if the member is appointed for a fifth successive year (and this appointment is not made a terminal year appointment) does he obtain tenure.

After a faculty member obtains tenure he is a permanent employee whose employment continues unless he is dismissed for cause under Education Code

§ 24306 after proceedings established by so-called Executive Order No. 113.

Since plaintiffs herein have never attained tenure, Executive Order No. 113 is inapplicable. Plaintiffs argue that, although they do not have formal tenure, they are in a similar status because they have an "expectancy of reappointment" (within the meaning of such cases as Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970) and Greene v. Howard Univ., 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969) holding in effect that faculty having such an expectancy, are entitled to the same notice and hearing as if they were tenured).

■ We cannot agree with plaintiffs on this point. A reading of *Ferguson*, and other cases discussing "expectancy of reappointment," makes clear that such concept is applicable only in those situations where the institution does not have a formal tenure system but deals with its faculty as though they do have tenure. The concept does not apply where there is, as in our pending case, a formal tenure system under which the institution makes clear distinction between those who have tenure and those who do not.

We hold, therefore, that the rights of plaintiffs in our pending case must be determined according to due process rules applicable to probationary, non-tenured faculty as distinguished from tenured faculty.

It has been the consistent practice and understanding at the college that cause is not required to be shown when the employment of a non-tenured faculty member is not renewed after any given probationary year or if any reemployment is indicated as terminal.

Although California law does not require a hearing for non-tenured members whose employment is not renewed, the Chancellor, acting under Title 5, Calif.Adm.Code § 42714, has, nevertheless, provided a separate and different grievance procedure, Executive Order No. 112, issued September 30, 1970, under which any faculty member may challenge any claimed wrong relating to his employment and working conditions, including non-tenured faculty complaining about renewal of their appointments.

Plaintiffs initiated their grievance procedure under this Executive Order No. 112, complaining of the President's decisions not to renew their appointments. Shortly thereafter, however, and before any further proceedings under Executive Order 112, they filed their complaint in this court, alleging upon information and belief that the non-reappointment decisions were based upon impermissible grounds, i. e., exercise by them of First Amendment rights and further alleging that the admittedly available grievance procedures provided by Executive Order 112 are inadequate and unconstitutional.

■ Plaintiffs recognize that, although a state administrative remedy, which purports to provide relief for an already accomplished deprivation of civil rights, need not be pursued before resort to federal court (See McNeese v. Bd. of Ed., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)), a state administrative procedure, which is designed to forestall a threatened deprivation of civil rights, e. g., a grievance procedure, like that provided by Executive Order 112, under which plaintiffs are given opportunity to convince college authorities that they should be reappointed, must be exhausted before resort to this court under 42 U.S.C. § 1983—provided only that the grievance procedure is fair and adequate for the purpose. Whitner v. Davis, 410 F.2d 24, 28, 29 (9th Cir. 1969).

Plaintiffs, therefore, must and do take the position that the grievance procedures provided by Executive Order No. 112 are inadequate as a means for correcting the allegedly wrongful decision of the President not to renew their employments. This is the basic question here presented.[1]

---

1. Because it appeared upon first examination of the complaint herein that plaintiffs were seeking to restrain enforcement, upon the ground of unconstitutionality, of

## EXECUTIVE ORDER NO. 112

Executive Order 112 provides, in substance, that the grievance procedures shall be initiated by written notice from the grievant to the President of the College setting forth the alleged wrong; that the President shall cause to be selected, by lot from the tenured academic employees, a grievance panel of three members; that the grievant and certain specified members of the administration may each exercise two peremptory challenges to any member of the panel and an unlimited number of challenges for cause; that the panel shall determine whether a hearing is required; that, if such determination is negative, the panel shall state its reasons for such determination and the grievance proceeding will be ended; that, if the determination is affirmative, notice of the time and place for such hearing will be given to the grievant.

It further provides that a tape recording of the hearing will be made; that the grievant has the burden of persuasion and shall present his evidence first, following which other evidence shall be received; that the grievant may examine all evidence presented and question all witnesses; that the panel shall call witnesses as requested by the grievant; that such hearings shall not be open to the public; that the findings and recommendations of the panel are confidential and may not be made public except as may be filed in court or introduced in evidence in an administrative or court proceeding brought to review the action

under the grievance proceedings; that the hearing shall not be conducted according to technical rules relating to evidence and witnesses and that any relevant evidence will be admitted if it is the sort of evidence on which responsible persons are accustomed to rely.

Under the grievance procedures the panel makes a written report of its findings and recommendations which it forwards to the President; the decision of the President "shall concur with the recommendations * * * except in rare instances when, in the opinion of the President, compelling reasons exist for a different result." If the President reaches a different result he is required to detail the reasons therefor in a written Notice of Decision; this decision is final at the college level.

The procedure provides for an appeal to the Chancellor of the State College system in those cases in which the President and the panel disagree; upon such appeal the Chancellor, or his designated officer, shall determine if review is appropriate; if review is granted a Review Committee of three persons, comprised of members of the state college faculties, will review the grievance procedure and make written recommendation to the Chancellor.

The Chancellor's decision "* * * shall agree with the Committee's recommendation except in rare instances and for compelling reasons which shall be stated in writing in the Chancellor's Notice of Decision."

---

an order made by an administrative board acting under state statute within the meaning of 28 U.S.C. § 2281 and Jackson v. Nelson, 405 F.2d 872 (9th Cir. 1968), a three judge court was convened.

It has now become clear that even assuming Executive Order 112 to be an order of statewide application within the meaning of *Jackson*, plaintiffs do not really challenge the constitutionality of either Executive Order ·112 or Title 5, Calif. Adm.Code § 42714 under which it was issued by the Chancellor.

The thrust of plaintiffs' action is not at the statute or order, but only with its

claimed inadequacy as a state administrative remedy available to plaintiffs for forestalling the President's allegedly wrongful decision not to reappoint them.

A three judge court is not required unless the challenge is directed to the constitutionality, either on its face or as applied, of the statute or order itself.

For this reason a separate order is being filed dissolving the three judge court and remanding the case to the original single judge for decision.

Just what constitutes due process as applied to decisions not to reappoint probationary, non-tenured faculty has been considered by a number of Circuits.

■ It is well established that, although tenured teachers are entitled to full due process before they may be dismissed, less demanding, less adversary, minimal process suffices for non-reappointment of probationary teachers. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970); Thaw v. Board of Public Instruction, 432 F.2d 98 (5th Cir. 1970); Drown v. Portsmouth School Dist., 435 F.2d 1182 (1st Cir. 1970).

The Tenth Circuit has held that a non-tenured teacher has no right at all to a hearing or even to notice of the reasons for his non-reappointment—even if the reason is the teacher's exercise of his freedom of expression. Jones v. Hopper, 410 F.2d 1323 (10th Cir.) The Fifth Circuit holds that a non-tenured teacher must initiate any hearing proceeding and has the burden of proving his allegation that non-reappointment came about as a result of his exercise of First Amendment rights. The First Circuit holds that a non-tenured teacher is entitled to be given notice of the reasons for his non-reappointment but is not entitled to an adversary hearing. Drown v. Portsmouth School Dist., supra; see also, Roth v. Board of Regents, 310 F.Supp. 972, 980 (W.D.Wis.1970).

Plaintiffs complain that the grievance procedures of Executive Order 112 are not adequate for their purpose because, admittedly, they are not in any sense a "trial;" that the stated purpose of the procedure is merely to provide an equitable means of correcting actions taken by the colleges which directly aggrieve academic employees; that hearings are .not to be conducted according to technical rules relating to evidence and witnesses and that any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely.

■ However, procedural due process does not require a formal "trial," conducted under judicially prescribed rules of evidence—even in such cases as dismissal of students. (See Goldberg v. Regents, 248 Cal.App.2d 867, 57 Cal. Rptr. 463, 365 (1967). For stronger reasons such is not required in cases involving merely the non-reappointment of a probationary faculty member.

■ Plaintiffs also complain that the grievant may not be represented by an attorney. Executive Order 112 provides that the grievant may not be represented by another person except that, upon a showing of inability for self representation by reason of emotional, mental or physical ground, and upon agreement by the committee on the need for representation by another; the grievant may then be represented by anyone he selects —"so long as his representative is not an attorney admitted to practice law before any state or federal court."

■ But, the right to be represented by an attorney is not an essential ingredient to a fair hearing in all kinds of proceedings. Perlman v. Shasta Joint Junior College Dist., 9 Cal.App.3d 873, 88 Cal.Rptr. 563 (1970).

■ It has been recognized that the localized, less formal, less adversary atmosphere of school constituted review bodies are the most appropriate forums for adjudicating problems of teacher rehiring. Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970).

We are aware that in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970), the Supreme Court, considering termination by state officials of certain welfare benefits previously granted to an eligible beneficiary, held that, although counsel need not be furnished at such a pre-termination hearing, the recipient must be allowed to retain an attorney if he so desires; also that, although such a hearing need not take the form of a judicial or quasi-judicial trial, the recipient must be provided with timely and adequate notice detailing the reasons for termination, and an effective opportunity to defend by con-

fronting adverse witnesses and by presenting his own arguments and evidence orally before the decision maker.

In *Goldberg*, however, the city's procedures, unlike the procedure here, did not afford the recipient any opportunity to personally appear, either with or without counsel, before the official who decided upon termination.

Further, in *Goldberg*, the hearing pertained to a statutory entitlement the termination of which affected "the interest of the eligible recipient in uninterrupted receipt of public assistance." It was for this reason that the court held that due process required a pre-termination hearing of the kind described—including counsel if desired.

In our pending case, the plaintiffs have no such entitlement, statutory, contract or otherwise, nor any interest in the uninterrupted continuance of their employment. *Goldberg* is, therefore, inapposite.

Plaintiffs also complain that the grievance procedure "leaves the formal decision making up to the very person who fired plaintiffs," referring to provisions to the effect that at the conclusion of the panel hearing, the grievance panel submits findings and recommendations to the President of the College (or his designee) who makes the actual decision.

■ In the first place, as we have already noted, the President did not, in this case, "fire" or dismiss any of the plaintiffs; he merely decided not to renew their annual employment contract and, in the case of Ruhl renewed it for one year with notice, however, that the renewal was terminal.

In such a situation, the fact that a grievance procedure, providing for a hearing on the matter before a panel of the faculty member's colleagues, leaves the actual decision up to the President, does not necessarily amount to a denial of procedural due process. See Marcello v. Bonds, 349 U.S. 302, 311, 75 S.Ct. 757, 99 L.Ed. 1107 (1954); Pangburn v. CAB, 311 F.2d 349, 356–358 (1st Cir. 1962).

This is especially so where, as provided by Executive Order 112(1) the President and the hearing panel must attempt to resolve their differences, and if no resolution occurs, the President must then concur with the recommendation of the panel "except in rare instances when compelling reasons exist for a different result." If the President does not concur, his compelling reasons must be detailed in a written Notice of Decision, a copy of which must be sent to the grievant who may then have a further appeal from the decision of the President of the College to the Chancellor of the State College system. Thus, it is not really correct to say, as plaintiffs argue, that the "final decision" is up to the official who "fired" plaintiffs.

We do not consider Endler v. Schutzbank, 68 Cal.2d 162, 65 Cal.Rptr. 297, 436 P.2d 297 (1960) or Calagaz v. Calhoun, 309 F.2d 248 (1962), relied on by plaintiffs, as comparable with the situation now before this court.

■ Plaintiffs contend that they were not given the reasons for the decisions concerning their reappointment. In their complaint, however, they venture to allege upon information and belief their knowledge of the reasons—assertedly their exercise of First Amendment rights. Moreover, plaintiffs attach to their own complaint the rating reports and recommendations of their respective departments and the deans indicating the basis for non-renewal.

Further, we are of the opinion that, whatever may be the due process requirement for providing reasons for non-renewal in situations where no grievance procedure is provided (See Roth v. Regents, supra; Drown v. Portsmouth School Dist., 435 F.2d 1182 (1st Cir. 1970), there is no such requirement where there is, as in this case, a reasonable procedure by which the non-tenured faculty member may challenge his non-renewal and, thus raise the question of the reasons for it. Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970).

Plaintiffs also complain that the grievance must be asserted by and that the grievance procedure must be initiated by the grievant rather than by the college. Bearing in mind, however, that the grievance here asserted is not dismissal or "firing" (as plaintiffs would describe it), but merely a decision not to renew the annual appointment of a probationary faculty member, there is nothing unfair about requiring the individual member to assert any such grievance and to initiate the procedure in such a case. Sindermann v. Perry, *supra*, Roth v. Board of Regents, 310 F. Supp. 972 (W.D.Wis.1970).

Plaintiffs also contend that the grievance procedure is inadequate in that they were given no notice that they were eligible to pursue their grievances through a hearing process. There is no merit to this contention: The record shows that each plaintiff received notice of the decision concerning their reappointment and, further, that several months previously each had received a copy of the Executive Order 112 grievance procedure. Further, each plaintiff did in fact, file under those procedures within the required time.

Plaintiffs also complain that under the grievance procedure, although the chairman of the panel must arrange for a tape recording of the proceedings, the proceedings must be kept confidential—except that they may be used in court or administrative proceedings to review any action taken in which case the grievant may obtain a transcript of the recording but at his own expense and on condition that he furnish the college with a copy. Absent some showing that plaintiffs were financially unable to meet the expense of a transcript, we find nothing in the transcript provisions of the procedure that amounts to deprival of due process.

Plaintiffs also complain that hearings are not open to the public and that only persons involved in the proceedings, plus two representatives of recognized faculty organizations, one se-lected by the grievant and the other selected by the President, are allowed to be present. We find nothing constitutionally defective in such a provision concerning hearings of the kind here in question.

Plaintiffs make some complaint about a panel peremptory challenge provision being weighted against them. We note, however, that the panel is selected by lot from the faculty; an unlimited number of challenges for cause is allowed and the grievant is allowed two peremptory challenges. We find nothing constitutionally defective in the procedure.

For the foregoing reasons plaintiffs' application for a preliminary injunction is denied and the outstanding temporary restraining order is dissolved pending plaintiffs' exhaustion of what this court finds to be the fair and adequate grievance procedures available to them under Executive Order 112 and, subject to this order, the court reserves power to consider further proceedings herein.