**Sheldon J. WATTS, Plaintiff,**

v.

**BOARD OF CURATORS, UNIVERSITY OF MISSOURI, et al., Defendants.**

**No. 19391–D.**

United States District Court,
W. D. Missouri, W. D.

Sept. 12, 1973.

Wm. H. Pickett, Kansas City, Mo., for plaintiff.

Jackson A. Wright and Marvin E. Wright, Columbia, Mo., Gene P. Graham, Graham, Paden, Welch & Martin, Independence, Mo., Paul Van Osdol, Jr., Terrell, Van Osdol & Magruder, Kansas City, Mo., for defendants.

### STATEMENT

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAUL X WILLIAMS, District Judge.

### STATEMENT

1. This is an action filed in the District Court of the Western District of Missouri by Plaintiff, Sheldon J. Watts, a former non-tenured assistant professor of the University of Missouri-Kan-

sas City in which Plaintiff claims a deprivation of his constitutional rights because of the nonrenewal of his employment contract. Plaintiff seeks relief under 42 U.S.C. § 1983 against the Defendants, the Board of Curators of the University of Missouri (governing Board of the University of Missouri pursuant to article IX, Section 9A, Constitution of Missouri, 1945), the Chancellor of the campus of the University of Missouri-Kansas City, the Acting Provost of University of Missouri-Kansas City, the Dean of the College of Arts and Science of the University-Kansas City, and those professors at the University of Missouri-Kansas City comprising the Committee on Tenure and Promotion, Department of History, University of Missouri-Kansas City.

The case was tried to the Court without a jury.

## FINDINGS OF FACT

1. Plaintiff was initially employed as a non-tenured assistant professor (probationary teaching employee) at the University of Missouri-Kansas City for the academic year 1966-1967 and was re-employed under separate and distinct one year contracts thereafter until the last year of Plaintiff's employment when his employment was pursuant to a terminal contract for the term September 1, 1970, through August 31, 1971. Mr. Watt was not discharged. He was merely not re-employed after August 31, 1971.

2. The Board of Curators of the University of Missouri adopted academic tenure regulations on May 10, 1950. The regulations were in full force and effect at all times relevant to this lawsuit. The regulations established a tenure system for all academic employees of the University and under them, the Plaintiff did not have tenure rights.

3. The terminal contract under which plaintiff was employed for the academic year 1970-1971 pursuant to the tenure regulations contained unambiguous language that was and is sufficient notice to the Plaintiff that he would not be recommended for re-appointment at the end of his terminal period, August 31, 1971.

4. The University of Missouri did not offer Plaintiff an employment contract for the academic year 1971-1972.

5. The terminal contract for the academic year 1970-1971 was pursuant to the recommendation of the Committee on Tenure and Promotion, Department of History, University of Missouri-Kansas City, which recommendation was concurred in by the Dean of the College of Arts and Science; also by the Chancellor and acted upon by the Board of Curators of the University of Missouri by issuance of the terminal contract.

6. Plaintiff was initially notified by the Dean of the College of Arts and Science by letter of October 13, 1969, that the Committee on Tenure and Promotion had recommended that he be granted a leave of absence without pay to do research in England for a period of one semester (January 1970-August 1970) but further notified Plaintiff that the Committee had recommended that his appointment for the academic year 1970-1971 would be terminal appointment. The letter stated specifically that the decision reflected the fact that although Plaintiff's research project for the publication of a book had been supported for a considerable length of time by the University, Plaintiff had not produced or completed his book. Plaintiff was further notified by the Dean that if the manuscript of the book was accepted for publication prior to January, 1971, the Committee would reconsider the recommendation for terminal contract. This was again confirmed by the Dean's letter of July 23, 1970.

7. Plaintiff received during his employment and prior to October, 1969, the support of the Department of History and the University in pursuing research for publication of the proposed book. The University provided recommendations and Plaintiff received a $2,000 grant for research in England during

the summer of 1967. The University provided Plaintiff with an additional and separate $1,000 for research in England during the summer of 1968 and Plaintiff benefitted from a reduced teaching load in order to allow additional time for preparation of his book. Plaintiff had set his own goal to the University that the book would be forthcoming and completed prior to January 1, 1971 and plaintiff said he considered the decision of the Tenure Committee to be fair. Plaintiff previously discussed with the Committee the status of his book and the need for a leave of absence.

8. Plaintiff, on December 9, 1970, wrote a letter to the Department Chairman and Chairman of the Tenure and Promotion Committee and attached thereto a copy of a purported contract with Coronado Press as proof of a contract to publish his book with the implication that the same was in compliance with the conditions for review by the Committee which had earlier been communicated to the Plaintiff. The Dean, following receipt of a copy of Plaintiff's letter, wrote to the Department Chairman recommending that in view of the documents furnished by Plaintiff that the Committee reconsider the terminal contract. The Committee on Tenure and Promotion met with the Dean of the College of Arts and Science and the Acting Provost and voted unanimously not to reverse its earlier recommendation due to the fact that Plaintiff had not completed his book and did not have a complete manuscript.

9. Plaintiff received a written notice of reason for non-reappointment by a letter from the Dean of the College of Arts and Science dated October 13, 1969, confirmed by further letter of July 13, 1970. Further notice of reason was set forth in a letter from the Department Chairman and Chairman of the Tenure and Promotion Committee of the History Department to the Plaintiff dated October 28, 1970. Plaintiff appeared before and discussed with the Tenure Committee the status of research on his purported book immediately prior to the recommendation of the Tenure Committee to recommend a terminal appointment for Plaintiff in academic year 1970-1971. Plaintiff was further given the opportunity to appear before the Committee to hear the reason for non-reappointment by the letter of invitation from the Dean of the College of Arts and Science dated May 7, 1971. Plaintiff failed and refused to appear and by letter of May 10, 1971, stated "I refuse to have anymore to do with this business. I forgive you."

10. On December 9, 1970, when Plaintiff submitted the purported contract with Coronado Press as being evidence of his complying with the conditions for reconsideration by the Committee, he had in fact not completed the book and did not have a completed manuscript for his book. Plaintiff at that time had only completed and had in existence a manuscript for three chapters of his book that, as stated by him, would ultimately include nine chapters in all. As of June, 1971, six months following submission of the Coronado Press agreement, Plaintiff had only three chapters of the manuscript completed out of the stated future nine chaptered book. Plaintiff considered the contract with Coronado Press, which was signed only by Coronado Press, not to be a binding agreement upon him—stating that the Press had a contract, but he did not. Plaintiff had earlier written to the Dean of the School of Graduate Studies and stated that the research grant for the summer of 1968 had made it possible for him to "complete my research on this topic this last summer." The evidence shows, however, that Plaintiff had not then completed the research on the book. The evidence also reflects that the book was not completed on January 1, 1971, and that a finished manuscript for the book was not completed on January 1, 1971. This is indicated by letters directed to Plaintiff verifying that only three chapters had been completed and that publishers (other than Coronado

Press) would not make a final judgment until they had received the completed manuscript.

11. The primary and basic reason for the recommendation of the Committee on Tenure and Promotion for the University to issue a terminal contract to Plaintiff was the fact that though Plaintiff had received support from the University to enable him to complete and publish a book, he had not met his commitment to do so. This reason was communicated to Plaintiff by the Dean of the College of Arts and Science to Plaintiff in letters dated October 13, 1969, and July 23, 1970. Additional consideration for the recommendation of the Committee was set forth in correspondence from the Department Chairman to the Dean dated October 7, 1969.

12. Another reason for the Committee's action was the Plaintiff's attitude of unwillingness to teach world history following the Department Chairman's announcement that all faculty members in the history department would possibly be called upon from time to time to teach courses in world history. Plaintiff asked at least one member of the Committee to get together with others and oppose the teaching of world history. The Tenure Committee was not concerned with the attempt to organize the faculty or to protest an assignment to teach, but was concerned with the attitude of unwillingness of the Plaintiff to accept his responsibility of teaching classes assigned by the Department Chairman.

13. After the initial recommendation of the Committee, but prior to the Committee's decision, the Department Chairman assigned Plaintiff to teach a class in world history. Plaintiff responded to the assignment by his letter to the Department Chairman in which he stated he was prepared to teach the course "conditioned on the fact that the decision be openly made, preferably by the faculty of the history department." Since teaching assignments were made by the Department Chairman and not

after faculty vote, the response was in essence a refusal to teach. This factor was not considered in the recommendation, but was a consideration in the decision of the Committee not to review its recommendation, since it again confirmed the Committee's earlier concern about the Plaintiff's unwillingness to teach.

14. Other factors brought before the Committee included the lack of interest in his profession at the state level; disloyalty to his colleagues in the history department by distribution of a critical review in respect to a publication of a fellow faculty member; and the fact that on one occasion Plaintiff had suggested that the University "might need burning down." All of these latter considerations were categorized as being minor and alone would not have been considered by Committee members as sufficient to warrant a recommendation of a terminal contract.

The statement that the University "might need burning down" was thought and considered by the Committee to have been made in jest and was considered a minor factor which in and of itself was not a reason for recommending a terminal contract. It was reported by the Committee because it felt a responsibility to report such a statement to the higher authorities of the University. Although not considered a reason in and of itself for the Committee's recommendation, it was considered in determining the Plaintiff's overall suitability for a permanent position on the faculty.

15. It was deemed by the Committee that Plaintiff had a right to distribute a critical review of a colleague and the distribution in and of itself was not a factor; but to the extent such action of Plaintiff affected Plaintiff's relationship with other faculty members in respect to whether or not he would be a good colleague, working day to day with other departmental members, in a permanent position was considered even though this consideration was deemed a very minor point.

16. Plaintiff's amended complaint alleges that the recommendation of the Committee was because he "voiced his opinion" in the department. The testimony of the Committee members as well as the testimony of the Chancellor reveals, and the Court finds, that the Plaintiff was not considered as being disruptive of the department, and the expression of his opinion was not a reason for the recommendation of a terminal contract.

17. The Chancellor concurred with the recommendation of the Committee on Tenure and Promotion in the non-reappointment and the issuance of a terminal contract because, first, Plaintiff had not completed the manuscript for his book after the department had made considerable effort to assist him by a reduced teaching load, leave of absence, and grant and that Plaintiff failed to keep his commitment in respect to the publication of a book; and secondly, the unwillingness of the Plaintiff to teach a course in world History which had been assigned by the Department Chairman.

18. Action of the Defendants and each of them was in no case in bad faith.

19. The plaintiff is not of the black race and no race issue is presented in this case.

## CONCLUSIONS OF LAW

1. Federal jurisdiction is properly invoked under the Federal Civil Rights Act, Section 1983, Title 42, United States Code.

2. The Burden of Proof is on the plaintiff to prove his alleged cause of action by a preponderance of the evidence.

3. Plaintiff, a non-tenured assistant professor (probationary teaching employee) was employed by the University of Missouri on separate and distinct one year contracts. Plaintiff's employment was subject to and controlled by the Academic Tenure Regulations of the University of Missouri adopted by the University Board of Curators on March 10, 1950 which established a tenure system for all academic employees of the University. A non-tenured assistant professor of a university with a tenure system is not legally entitled to a written statement of reasons for his non-reappointment and is not entitled to an administrative hearing at the University on the question of his non-reappointment. The Board of Regents of State Colleges et al. v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Roth decision, supra, laid to rest the legal question of procedural due process as it applies to the non-reappointment of non-tenured professors in that it holds that procedural due process does not require a statement of reasons and a hearing. However, even prior to the Roth decision it was not a requirement in the 8th Circuit for a non-tenured professor to receive a statement of reasons and a hearing in respect thereto. Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153 (8th Cir. 1969).

4. Plaintiff was afforded due process in that he actually received written notice of the reason and had an opportunity to appear before the Committee; and refused to so appear.

5. Plaintiff did not have a legal expectancy of continued employment so as to entitle him to reasons and hearing, because expectancy of continued employment is not a factor where a university has an existing tenure system. Roth, supra; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 and Toney v. Reagan, 326 F.Supp. 1093 (N.D.Cal., 1971) 467 F.2d 953 (9th Cir. 1972). Pursuant to the academic Tenure Regulations of the University, Section 3 and Section 4–E, a non-tenured assistant professor is entitled only to a notice that he will not be reappointed, which notice in the case at bar was given far in advance of the time requirements of said Sections. Although

Plaintiff has made no claim of *"de facto tenure"*, the foregoing Sections also nullify any such *"de facto* tenure" as referred to in Perry v. Sindermann, supra. The Academic Tenure Regulations, Section 4–F, provide that "It shall not be necessary for the Dean or Department Chairman to provide him with any statement of causes or reasons for not recommending reappointment." The Academic Tenure Regulations of the University of Missouri were both valid and unambiguous and do not deny to plaintiff procedural due process constitutional rights. As concluded in *Roth*, supra, Plaintiff was not being denied any form of liberty or protected property interest.

6. Plaintiff has not met his burden of proof in this case. Plaintiff, to establish a claim in the case at bar, under the Federal Civil Rights Act, in respect to the non-renewal of a non-tenured faculty member's teaching contract must show that the decision not to reappoint him rested on impermissible grounds. *Roth*, supra, Freeman v. Gould Special School District, supra; Wilson v. Pleasant Hill School District, 334 F.Supp. 1197 (W.D.Mo.1971). Aff'd 465 F.2d 1366 (8th Cir. 1972). In the 8th Circuit, a decision not to reappoint a non-tenured faculty member does not need to be supported by any reason at all. Tims v. Board of Education, 452 F.2d 551 (8th Cir. 1971). Plaintiff does not have a constitutional right to public employment or continued public employment. Freeman v. Gould Special School District, supra.

The burden of proof is on the plaintiff to show that non-renewal was for an impermissible reason.

Were the plaintiff protected against arbitrary non-reappointment (We note he is not so protected—See Freeman v. Gould Special School District, supra), Plaintiff can prevail only by making a reasonable showing that the stated reasons are inappropriate as a basis for the decision or that they are wholly without basis in fact and that the reasonable

showing cannot be counted by the Defendants. Plaintiff has not proved that the reason for non-reappointment was impermissible and has not shown the reason to be wholly inappropriate as a basis for the decision of the University and that the reason is wholly without basis in fact.

7. It is not an impermissible reason not to reappoint a professor when he failed to live up to his commitment to the University to complete the research and manuscript for a book. Ronmani v. Leestamper, U.S.D.C.Mass., Memorandum Op., May 30, 1972, Civil Action 71–1098–G.

The plaintiff did not adduce any evidence showing that the decision of non-reappointment was for reasons other than those stated by members of the Committee on Tenure and Promotion of the History Department of the University of Missouri-Kansas City. This testimony shows that the reason for the decision not to re-appoint was the failure of Plaintiff to fulfill his self-appointed obligation and agreement with the Committee that he would at or prior to January 1, 1971, have a complete manuscript of his purported future book. Plaintiff had agreed that the date for completion of the book was fair. Plaintiff had received substantial University support by way of recommendation for research grants, actual receipt of a research grant from the University, reduced teaching load and a leave of absence for the specific purpose of finishing the book.

8. Evidence further shows Plaintiff's unwillingness to teach a class in world history. Plaintiff, when the entire faculty was informed that they might have to teach courses in world history, approached members of the department in an attempt to make them oppose the teaching of world history. The non-reappointment was not based upon this protest and was not based upon his expression of opinion in this respect. But his conduct was considered from the

**890**

standpoint of a professor being unwilling to accept an assignment to teach a course which assignment had been made by the Department Chairman.

9. "A college has a right to expect a teacher to follow instructions and to work cooperatively and harmoniously with the head of the department." Chitwood v. Feaster, 468 F.2d 359, 361 (4th Cir., 1972); Pickering v. Board of Education (1968) 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. It was proper in reaching a judgment of suitability for a permanent position in a faculty to consider whether or not Plaintiff was a good colleague to other members of the faculty. Consideration of interest in his profession at the state level, though not a reason for the recommendation in the case at bar was also a proper factor which the Committee could consider in a decision as to his suitability for a permanent position on the faculty.

The Tenure Committee, in forwarding its recommendation of non-reappointment alluded to three other areas; interest in his profession at the state level, an alleged statement that the University might need burning down, and last, the distribution of a critical review on the publication of a fellow faculty member in the department. The testimony of the members of the Committee show that these three items were viewed as very minor points. Not one of them was considered as ground for non-reappointment. The inclusion of these points in the communication to the Dean was due to the fact that the Committee felt it would be derelict in its obligation to higher authorities not to point out this information.

In respect to the distribution of a critical review received by a fellow member of the department, it was recognized that the Plaintiff had the right to distribute the review and this action was considered merely in respect to Plaintiff's ability to work cooperatively on a day-to-day basis and harmoniously with co-workers in the Department of History. *Pickering,* supra; *Chitwood,* supra.

10. In respect to the alleged statement that maybe the University needed burning down, the testimony of the Committee members, as well as the Chancellor who ruled upon their recommendation, shows that the making of this statement was not a reason or a factor for the non-reappointment.

11. In respect to the free speech of teachers as it applies to co-workers and Department Chairmen the decisions in Pickering v. Board of Education, supra, and *Chitwood,* supra, establish that statements directed towards any person with whom the plaintiff would normally be in contact in his daily course of work which would affect harmony among co-workers or the maintaining of discipline by an immediate superior is not "protected speech."

Plaintiff's complaint alleges his non-renewal to be due to the fact that he expressed his "opinion" in respect to procedural aspects of the department; and further states that non-renewal was because of a letter dated January 20, 1971, from himself and two other professors to the Dean of the College of Arts and Science. The letter of January 20, 1971 had no relationship to the recommendation of the Committee as is evidenced by the fact that the Committee reached its decision in October of 1969, many months prior to the letter and secondly, from the fact that the Committee and department Chairman did not have any knowledge of such a letter. The evidence reveals that the committee and the Chancellor felt that all professors should be free to express their opinions and that Plaintiff did not receive his terminal contract because of his expression of opinions within the department.

12. The evidence conclusively shows that the recommendation of non-reappointment of Plaintiff was based upon the permissible grounds of the failure to keep his own commitment with respect

to the publication of a book, and his unwillingness to harmoniously accept a valid teaching assignment in world history. These factors were appropriate for consideration by the Committee and the University in determining the suitability of Plaintiff for a permanent tenure position on its faculty. As noted in Jones v. Hopper, 410 F.2d 1323, 1329 (10th Cir., 1969):

> "It would be intolerable for the courts to interject themselves and to require an educational institution to hire or to maintain on its staff a professor or instructor whom it deemed undesirable and did not wish to employ. For the courts to impose such a requirement would be an interference with the operation of institutions of higher learning contrary to established principles of law and to the best traditions of education."

In reaching its decision in this case the Court considered the principles enunciated in the following cases as well as those heretofore cited.

Langford v. City of Texarkana (8th Cir. 1973) 478 F.2d 262; Jackson et al. v. Wheatley School Dist. (8th Cir. 1972) 464 F.2d 411; Alexander v. The Warren Ark. School Dist. No. 1, Board et al. (8th Cir. 1972) 464 F.2d 471; Thomas et al. v. The Board of Education (8th Cir. 1972) 457 F.2d 1268; Ahern v. Board of Education of Grand Island School District (8th Cir. 1972) 456 F.2d 399; Rozman v. Elliott et al. (8th Cir. 1972) 467 F.2d 1145; Wilderman v. Nelson (8th Cir. 1972) 467 F.2d 1173 and Dougherty v. Walker (8th Cir. Aug. 20, 1973) 72-1664.[1]

Many of the issues that have been raised by Plaintiff in this case were determined against Plaintiff's contention in a Memorandum Order on a motion for summary judgment heretofore entered by Judge Elmo B. Hunter.

An Order in accord with these findings in being entered this day.

---

1. The opinion in the Dougherty case has now been withdrawn by the 8th Cir. Court of Appeals pursuant to Order entered on 9/19/73.