## Brownley v. Gettysburg College

*Robert W. Geigley,* for plaintiff.

*Lee C. Swartz, of Hepford, Zimmerman & Swartz,* for defendant.

KUGLER, P.J., Forty-First Judicial District, Specially Presiding, December 14, 1973.—This is an action brought in assumpsit and trespass by plaintiff, Edward R. Brownley, a former assistant professor at Gettysburg College, against Gettysburg College, a corporation, C. A. Hanson, individually and as President of Gettysburg College, and also against Eugene

Haas, individually and as Chairman of the Health and Physical Education Department of Gettysburg College.

An answer was filed to the complaint, together with new matter in which defendants pled the affirmative defense of the statute of limitations relative to the common-law actions of libel, slander, interference with contract and infliction of mental disturbance, and also alleged in said new matter that a substantial portion of plaintiff's complaint in assumpsit is based on the erroneous belief that a part of plaintiff's contract consisted of the A.A.U.P. Policy Documents and Reports, 1973 edition, when, in fact, only the 1940 Statement on Academic Freedom and Tenure have been adopted by the college. Defendants thereafter filed a motion for summary judgment and plaintiff filed a reply and answer to defendants' motion for summary judgment.

Argument on the motion for summary judgment was held on November 7, 1973, and this opinion and order pertains thereto.

The motion for summary judgment was filed under Pennsylvania Rule of Civil Procedure 1035. The summary judgment authorized by this rule is that authorized by Pa. R. C. P. 1034(a) except that under this rule the court may consider the amended affidavit filed by defendant, C. A. Hanson as President of Gettysburg College. See 2B Anderson, Pa. Civ. Prac., §1035.1.

In considering this motion, the court must always keep in mind that a summary judgment against a plaintiff is proper only if it would warrant the granting of a defendant's point for binding instructions after trial: Bremmer v. Protected Home Mutual Life Ins. Co., 436 Pa. 494, 260 A. 2d 785 (1970), appeal after remand, 218 Pa. Superior Ct. 364, 280 A. 2d 664 (1971).

Both plaintiff and defendants agree that there are two questions involved, as follows:

(a) Has plaintiff failed to plead any facts which would give rise to a contractual right to recovery?

(b) Is plaintiff's claim barred by the statute of limitations?

In his argument brief, plaintiff listed a third question raising the issue whether defendants' motion for summary judgment should be dismissed for procedural defect, particularly delaying the trial of the case? This question was withdrawn by plaintiff's counsel at argument, however, as it was agreed between the parties that the motion for summary judgment had been filed prior to the time that the case had been listed for trial and that plaintiff had entered into a stipulation with defendant to the effect that the case had been prematurely placed upon the trial list before a pending motion for a summary judgment was disposed of and that plaintiff had subsequently thereto filed a request for jury trial which had not been previously done. For this reason, the court has before it only the two questions set forth as (a) and (b) above, and will consider them in that order.

*Has plaintiff failed to plead any facts which would give rise to a contractual right to recovery?*

As set forth in 2B Anderson Pa. Civ. Prac., §1035.15:

"In determining the sufficiency of the pleadings upon the initial question raised by a motion for a summary judgment, the court should hold that such a motion does not admit the truth of facts which are irrelevant, or immaterial, poorly pleaded, or which can be determined to be false from an inspection of the record. Likewise conclusions, whether of law or fact, are not admitted".

When there is a conflict between the averments of a pleading and the exhibits which are attached

to the pleading, the latter control. Accordingly, those averments of the pleading which are then contradicted by the pleading's own exhibits are not admitted upon demurrer. In such case, the question before the court is whether the pleading, ignoring its averments which have been so contradicted, is legally sufficient: 2 Anderson, Pa. Civ. Prac. §1017.46.

The averments of a pleading which are contradicted by the document which it incorporates by reference are not admitted upon a demurrer to the pleading: 2 Anderson, Pa. Civ. Prac. §1017.47.

Keeping in mind the above principles, it is necessary to examine each allegation of plaintiff's complaint as well as all exhibits attached thereto.

Plaintiff in this action was appointed Assistant Professor of Health and Physical Education at Gettysburg College, effective September 1, 1965. On June 2, 1970, the president of the college sent a letter to plaintiff advising plaintiff that the year 1970-71 was established as his terminal year and that he would not be reappointed after that year. As set forth in the appointment letter to plaintiff, as well as the Faculty Manual, it is quite clear that initial appointments to the faculty are made for one year and are subject to renewal on an annual basis until tenure appointments are made. It is also clear that tenure appointments cannot be made prior to the completion of seven years of college teaching. In the opinion of this court dated April 5, 1973, in the equity action involving the same parties filed to February term, 1973, no. 1, this court agreed with plaintiff's contention that his employment would be in accordance with the "1940 Statement of Principles on Academic Freedom and Tenure endorsed by the American Association of University Professors and the Association of American Colleges."

In the foregoing opinion of this court dated April 5, 1973, this court stated:

"Plaintiff has pled a conclusion that Gettysburg College violated the provisions of the '1940 Statement'.[1]

"Plaintiff's Complaint shows that Gettysburg College complied with the '1940 Statement' by giving the plaintiff notice on June 2, 1970 that his employment would terminate at the close of the next academic year (8/31/71). This constituted nearly fifteen months' notice. Plaintiff's Exhibit No. 2.

"As shown by Plaintiff's Exhibit No. 1, the plaintiff had clearly not attained tenure nor was he summarily discharged prior to the termination of any yearly appointment. His appointments were from year to year until such time as tenure was attained. The letter of appointment (Exhibit 1) clearly states: 'The College has provided for tenure for persons who have completed seven years of college teaching'.

"The AAUP makes no contention that a teacher who has not attained tenure and who is dismissed at the end of a yearly contract after a notice of one year that he would not be reappointed, has any reason to complain.[2]

"The AAUP does not contend that an institution has any obligation to provide probationary faculty

---

[1] AAUP Academic Freedom and Tenure, a Handbook of The American Association of University Professors, Copyright 1967, by The American Association of University Professors, 1785 Mass. Ave., N.W., Washington, D.C., published by the University of Wisconsin Press, Madison, Wisc.—pages 33-46.

[2] Advisory Letters—Letter No. 1, Tenure: The Provision For a Year's Terminal Appointment in Cases of Dismissal Not Involving Moral Turpitude—AAUP Academic Freedom and Tenure (Referred to in footnote 1), at page 123, subparagraph (a) at middle of page. (AAUP Bulletin, 48: 394 (Winter, 1962)).

members with a statement of reasons for their nonreappointment, much less the right to a hearing in regard thereto.[3]

"For the reasons aforesaid, after careful study, this Court can find no facts which have been properly pleaded by the plaintiff, including his exhibits and documents incorporated by reference, which would constitute a contract entitling plaintiff to a hearing or to be reinstated as a teacher."

This court has again studied all of plaintiff's pleadings and exhibits very carefully and the court can find no properly pleaded facts which would constitute a breach of contract upon the part of Gettysburg College.

Plaintiff's allegations in assumpsit, even though extensive, when fully condensed clearly indicate that it is plaintiff's contention that he was entitled to tenure, and all of the rights thereof, after six years of service. By his own exhibits attached to the complaint, he had no basis in law or in fact for this assumption on his part. The exhibits are so extensive that we cannot quote therefrom in great detail. However, we point out that plaintiff's exhibit 4-b, on page 1 thereof, under the caption of "Tenure", it is clearly stated: "Tenure is therefore not a status which is automatically attained." On page 2 of said exhibit 4-b, it is stated: "For the probationary period of seven years candidates for tenure are in a continuous process of evaluation by their colleagues and department chairmen, with major comprehensive evaluations conducted during the third and sixth years."

---

[3] Advisory Letters—Letter No. 13. "Stating Reasons for Nonreappointment" AAUP Academic Freedom and Tenure (referred to in footnote 1) pages 136-37.

And on page 4 of the aforesaid exhibit 4-b it is stated:

"In more specific terms, in order to approve tenure for a particular candidate, the committee expects to receive the impression that there is, in the department, a general enthusiasm at the prospect of having this person as a permanent colleague."

As pointed out in Watts v. Board of Curators, University of Missouri, 363 F. Supp. 883 (1973), at page 888, which is the latest reported case which this court has been able to find which is pertinent to this matter:

"(2) 3. Plaintiff, a non-tenured assistant professor (probationary teaching employee) was employed by the University of Missouri on separate and distinct one year contracts. Plaintiff's employment was subject to and controlled by the Academic Tenure Regulations of the University of Missouri adopted by the University Board of Curators on March 10, 1950 which established a tenure system for all academic employees of the University. A non-tenured assistant professor of a university with a tenure system is not legally entitled to a written statement of reasons for his non-reappointment and is not entitled to an administrative hearing at the University on the question of his non-reappointment. The Board of Regents of State Colleges et al. v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Roth decision, supra, laid to rest the legal question of procedural due process as it applies to the non-reappointment of non-tenured professors in that it holds that procedural due process does not require a statement of reasons and a hearing. However, even prior to the Roth decision it was not a requirement in the 8th Circuit for a non-tenured professor to receive a statement of reasons and a hearing in

respect thereto. Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F. 2d 1153 (8th Cir. 1969)."

In the case of Perry v. Sinderman, 408 U. S. 593 (1972), in an opinion written by Mr. Justice Stewart and handed down on the same day as the opinion in Board of Regents v. Roth, 408 U. S. 564, also written by Mr. Justice Stewart and referred to in the above quote from Watts v. Board of Curators, University of Missouri, the facts were that Mr. Sindermann had been a teacher in the State College System of the State of Texas for a period of ten years. This case fully supported Roth but the court sent the case back to the lower court for the purpose of determining whether Mr. Sindermann had de facto tenure. This was because Mr. Sindermann alleged that the college had a de facto tenure program, and that he had tenure under that program. He claimed that he and others legitimately relied upon an unusual provision that had been in the college's official faculty guide for many years and which stated as follows:

" 'Teacher Tenure: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work.' "

When the foregoing language is compared to the language in the Gettysburg College Faculty Manual as set forth in plaintiff's exhibits 4-a and 4-b and some of which has been hereinabove quoted, the contrast is clearly evident and we find nothing which would just justify plaintiff in this action to have cause to have a legal expectancy to receive a seventh yearly contract.

Plaintiff did have a right to expect that he would not be relieved of his employment during the term of any yearly contract without being advised of the charges against him and a hearing thereon. However, plaintiff was not discharged during the term of his yearly contract and, on the contrary, was given more than a year's notice by the college that his contract would not be renewed.

As set forth in Watts v. Board of Curators, University of Missouri, supra, at page 888,

"Plaintiff did not have a legal expectancy of continued employment so as to entitle him to reasons and hearing, because expectancy of continued employment is not a factor where a university has an existing tenure system. Roth, supra; Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 and Toney v. Reagan, 326 F. Supp. 1093 (N. D. Cal., 1971) 467 F. 2d 953 (9th Cir. 1972)".

After full and complete study of plaintiff's pleadings and all of the exhibits attached thereto, we can only conclude that there are no facts which have been properly pleaded which would give rise to a contractual right of recovery.

In the case before this court, this court is unable to improve upon the language of Mr. Justice Stewart, in Roth, supra, where he stated, at 578, as follows:

"Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University

authorities to give him a hearing when they declined to renew his contract of employment."

*Is plaintiff's claim barred by the statute of limitations?*

Plaintiff argues in his brief, without citing authority, that the statute of limitations would not begin to run until September 1, 1971, which was the date of termination of plaintiff's employment.

If this court had found that there were any allegations of fact, not refuted by the exhibits, which would give rise to a contractual right of recovery, the foregoing contention would undoubtedly not be without merit.

However, since summary judgment must be rendered for defendant, Gettysburg College, a corporation, it naturally follows as a matter of law that plaintiff cannot recover from the individual defendants for allegedly causing the breach of a contract which was never breached.

Consequently, if plaintiff has properly alleged any facts in his complaint which may have entitled him to recover from the individual defendants, their liability must, of necessity, be for tortious conduct.

Plaintiff appears to admit that any action for libel or slander is barred by the Act of March 27, 1713, 1 Sm. L. 76, sec. 1, 12 PS §31, as amended by the Act of April 25, 1850, P. L. 569, sec. 35, 12 PS §32.

However, in the opinion of this court in the prior equity action, dated April 5, 1973, and filed to February term, 1973, no. 1 on page 8 thereof, the court recognized that there was a question relative to the applicable statute of limitations to be applied to actions which formerly constituted trespass on the case. That question was not before the court in the equity action and the court made no attempt to resolve the same for the reason that the court felt

that the question had to be properly raised under new matter in a responsive pleading.

The question of the applicable statute of limitations is now squarely before the court.

In Hull v. Curtis Publishing Co., 182 Pa. Superior Ct. 86, at page 96, 125 A. 2d 644 (1956), at page 649, Judge Woodside, stated:

"The appellant properly observed that 'It would probably be impossible to rely upon the distinctions between trespass vi et armis and trespass on the case for a determination of this problem because these distinctions have faded in our law to the extent that our procedural rules have completely abolished them.' "

In paragraph 18(e) of plaintiff's complaint, he alleges, inter alia, "By agency or conspiracy the defendants are allegedly equally liable for tortious interference with contract, violation of academic freedom and tenure to teach and coach at Gettysburg College, and the violation of the civil right to follow plaintiff's chosen profession, to earn his livelihood and to live with equal peace and liberty in Gettysburg, Pa. . . ."

Without holding that these allegations are sufficient to allege a conspiracy between the two individual defendants to injure plaintiff, for the purpose of answering the question relative to whether plaintiff's claim is barred by the statute of limitations, this court will assume that a conspiracy to injure plaintiff in his profession has been properly pleaded.

In our research relative to this question, this court has been unable to find any applicable appellate court cases in this Commonwealth. However, we have found a well-reasoned opinion by Judge Gerald J. Weber, of the United States District Court of the

Western District of Pennsylvania, Auld v. Moboy Chemical Corp., 300 F. Supp. 138 (1969).

In the above-cited case, four theories of recovery were alleged, namely, defamation, a conspiracy to defame, a conspiracy to injure a person in his trade or profession, and a conspiracy to deprive plaintiff of his civil rights; as has been done in the case now before this court.

While this court is somewhat reluctant to quote as extensively as we are going to quote from Judge Weber's opinion, we do so for the reason that it is the best reasoned applicable case which we have been able to find and it disposes of all issues raised in the case now before this court. This court concurs in the opinion of Judge Weber and, beginning at page 140, quotes therefrom as follows:

"Since there are no appellate opinions in Pennsylvania controlling on this matter we are required to determine the issue as we believe the Supreme Court of Pennsylvania would so decide.

"The conspiracy to be actionable must be a conspiracy to injure in one of the ways for which the law gives redress. Plaintiff's conspiracy claim must either [b]e a conspiracy to injure by defamation or to injure through some non-defamatory but otherwise tortious action.

"To the extent that we have a conspiracy to defame, we hold that the applicable period of limitation is the state statute of limitation on the overt act, i.e., one year. We decide this despite the holding of the Lackawanna County Common Pleas Court in Smith v. Morris, 40 Pa. D. & C. 237 [1940], that applied a six year statute of limitation on allegations of conspiracy to defame and false imprisonment. We are not bound by this lower state court determination and we do not consider it well-founded.

"There is authority elsewhere to support our decision.

"In Cimijotti v. Paulsen, 230 F. Supp. 39 [D.C. Iowa, 1964], affirmed 340 F.2d 613, [8th Cir., 1965] where plaintiff alleged a conspiracy to commit defamation the court held that the inclusion of the conspiracy count did not change in any way the statute of limitations for the tort itself.

"Plaintiff's cause of action in Morrison v. National Broadcasting Company, Inc., 19 N. Y. 2d 453, 280 N. Y. S. 2d 241, 227 N. E. 2d 572 [1967] was defendant's act of intentionally inducing plaintiff to appear on what defendant knew to be a 'rigged' television quiz program, which brought plaintiff into public scorn, ridicule and contempt so that his professional standing and reputation was seriously damaged. Plaintiff asserted that since this was an intentional tort the applicable statute of limitation was six years rather than the one year statute of limitation applicable to traditional defamatory torts of libel and slander. The Court held, citing the Restatement of Torts, §559, that defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. In determining the nature of the claims asserted, the court must look to the essence of the action and not merely to its name. Since plaintiff's present action seeks relief for damages to his reputation and professional standing this action falls within the ambit of tortious injury for defamation which the legislature has set a one year statute of limitations.

"To permit the plaintiff to circumvent the applicable statute of limitations for defamation by the simple procedure of alleging a conspiracy to defame would defeat the purpose of the statute of limitations imposed by the legislature. There appears to be no

logical distinction between the alleged conspiracy to defame and the alleged defamation itself. Both causes of action injure or damage the reputation of the plaintiff. The same reasoning is germane to our decision to apply the one year statute of limitation to plaintiff's allegation of a conspiracy to injure plaintiff in his business or profession. We will accept for purposes of defendant's motion, that plaintiff alleged a prima facie case of a conspiracy to defame the plaintiff in his business or profession. Plaintiff in Wildee v. McKee, 111 Pa. 335, 2A. 108 [1885] asserted a cause of action in trespass on the case for an alleged conspiracy to injure plaintiff in his profession by impinging plaintiff's integrity and capacity as a teacher. The court held that plaintiff had alleged a valid cause of action.

"At common law plaintiff's claim would be categorized as an action of 'trespass on the case'. 12 P. S. §32 prescribes a one year statute of limitations for all actions of 'trespass on the case for words'. Plaintiff's alleged conspiracy falls within this category of actions and would thus be barred by the statute of limitations.

"Plaintiff argues that he has set forth a cause of action couched in the terms of a conspiracy to deprive plaintiff of his civil rights. Plaintiff has failed to plead facts which are the bases for any civil action for an invasion of civil rights under the Federal Civil Rights Statutes, 42 U.S.C. §§1983 and 1985. The defendants have acted in a private capacity and for private interests and there is no averment that they were cloaked with public authority or acted under color of law. Even if plaintiff has sufficiently alleged a valid cause of action for deprivation of civil rights, we would apply the applicable statute of limitations for the state substantive offense, that is the one year

statute of limitations for defamation and the one year statute for conspiracy to defame plaintiff in his trade or profession, and be forced to dismiss the complaint."

The statute of limitations begins to run from the time of the commission of the overt act which is alleged to have caused the damage complained of: Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 131 A. 2d 622 (1957).

For the reasons aforesaid, this court makes the following:

## ORDER

And now, December 14, 1973, the motion for summary judgment is sustained and judgment is rendered in favor of defendants, Gettysburg College, a corporation; C. A. Hanson, individually and as President of Gettysburg College, and Eugene Haas, individually and as Chairman of the Health and Physical Education Department at Gettysburg College, and against plaintiff, Edward R. Brownley. Costs to be paid by plaintiff.