Bobby L. ROWE, Plaintiff,

v.

B. A. FORRESTER, Individually and as President of Enterprise State Junior College and his successors or assigns, et al., Defendants.

Civ. A. No. 1282-S.

United States District Court,
M. D. Alabama, S. D.

Jan. 9, 1974.

J. Victor Price, Jr., Montgomery, Ala., for the plaintiff.

L. Andrew Hollis, Jr., Enterprise, Ala., for defendant Forrester.

Charles M. Crook (Smith, Bowman, Thagard, Crook & Culpepper), Montgomery, Ala., for the other defendants.

## ORDER

JOHNSON, Chief Judge.

Plaintiff, a professor at Enterprise State Junior College (ESJC), seeks in this suit to vindicate his First Amendment rights. It is his contention that these rights have been violated by the defendants' decision to assign him to teach night classes at ESJC. On July 12, 1973, this Court stayed this action in order to allow plaintiff to present his contentions to the State Board of Education. The Board refused to grant relief to plaintiff, reversing the recommendation of its ad hoc hearing panel by a 6-2 vote. Now ripe for consideration, this case is by stipulation submitted on the pleadings, transcripts, depositions and briefs of the parties.

It should be observed initially that under 42 U.S.C. § 1983 this Court has original jurisdiction of this case and thus is not bound by the findings of the Board. Rather, this Court must review the entire record for itself to determine if the Board's decision is supported by substantial evidence. See Ferguson v. Thomas, 430 F.2d 852, 859 (5th Cir.

1970). Moreover, in this case, there are no specific findings of the Board. Evidence was taken before a three-member ad hoc hearing committee over a two-day period. Fifteen witnesses were heard, producing a transcript of over 700 pages. The ad hoc committee felt that the evidence was "in sharp conflict, and it is not possible to reconcile the opposing evidence presented by the two sides."[1] Nevertheless, the majority of this committee concluded that the issues of fact favored Mr. Rowe, and he was entitled to relief: "that Enterprise State Junior College be directed to modify Mr. Rowe's assignment so that he will be assigned not more than one night class per week." Without taking any additional testimony, or making any findings of its own, the State Board reversed the panel's decision. Consequently, in its present posture, the Board's conclusion is not entitled to substantial weight; it is up to this Court to weigh independently the conflicting evidence and to resolve the controversy between these parties.

Plaintiff Rowe contends that his assignment to night classes is part of a general attempt by the ESJC administration to harass and punish him for his exercise of First Amendment rights.[2] The following facts appear from the record. Plaintiff cites two particular instances as the basis for the administration's retaliatory actions. Sometime during the spring of 1970, Rowe and his sociology class decided to conduct a survey on academic, social and personal problems at ESJC. The idea for this survey was initiated during a class discussion on general problems at ESJC in Rowe's sociology class, and the stated purpose of a survey on this subject was to demonstrate to the students modern empirical methods of sociology. Defendants contend that during this classroom discussion Rowe made several derogatory comments about the administration.[3]

It is undisputed that shortly after this survey, Dr. Forrester, President of ESJC, and Joe Talmadge, the dean of academic affairs, along with several other members of the administration, had lengthy discussions with the plaintiff about the survey and the comments he made in class. During these discussions, Rowe denied that he made the derogatory remarks, and he proceeded to explain the purpose of conducting the survey. It is plaintiff's contention that the administration disapproved of the survey and feared that some of the findings of this survey would place the administration in a bad light. On the other hand, defendants claim that they had no particular objection to such a survey, but they were concerned about the remarks that had been attributed to Mr. Rowe.

Next, plaintiff contends that he attempted to obtain a black speaker on the subject of Viet Nam pacification to come to the school, but President Forrester vetoed the selection of the speaker because of his race.[4] In re-

1. Report of the Hearing Committee of the Alabama State Board of Education 6–7 (September 26, 1973).

2. Plaintiff also alleges that the administration harassed him by excluding him from all faculty committees, refusing to allow him to sponsor the Afro-Student Union, refusing to allow him to serve as Master of Ceremonies for the school's Founder's Day program, and by sending a student to "spy" on him. Plaintiff contends that these actions constitute a general pattern of harassment and retaliation for the exercise of his First Amendment rights. To prevail, however, plaintiff must demonstrate a nexus between the action complained of—assignment to night classes—and the exercise of his First Amendment rights.

3. One of Mr. Rowe's students reported to the administration that Mr. Rowe made critical remarks about Mr. Tommy Johnson, the dean of students, and Mr. Joseph Talmadge, the academic dean. Among the statements: plaintiff allegedly declared that "if Jesus Christ came back tomorrow, Tommy Johnson would crucify him."

4. Rowe stated that President Forrester explained his action at the time by noting that "he wasn't prejudiced himself, but  .   .   .

sponse to this testimony, defendant Forrester maintains that he does not recall the incident.[5] One of the defense witnesses, Mrs. Birkmeyer, testified that she vaguely remembered something about a black speaker, but she did not recall that it was a large issue at the time.

It is on the basis of these two incidents, plaintiff contends, that the administration at ESJC began to harass and punish him—a course of action that resulted in Rowe's assignment to night classes. The evidence, however, fails to support this contention.

The defendants present convincing evidence that Rowe's nighttime assignment resulted primarily from a continuing dispute between Rowe and his department head.[6] This dispute did not involve Mr. Rowe's statements on matters of general public concern, see Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), but rather resulted from disagreements about the regular operations and functions of the social science department and the proper relationship between the faculty and the administration within the college. Such speech does not trigger First Amendment protection.[7]

See e. g., Clark v. Holmes, 474 F.2d 928 (7th Cir. 1972); Chitwood v. Feaster, 468 F.2d 359, 361 (4th Cir. 1972); Watts v. Board of Curators, 363 F.Supp. 883, 890 (W.D.Mo.1973).

There is no question that Rowe was a subject of great concern to the administration of ESJC. Prior to the nighttime assignment, they attempted to have him transferred to another junior college. Moreover, the evidence shows that some of the actions of the college in its general treatment of Rowe were founded on a less than delicate sense of the essential role of academic freedom under the guarantees of the First Amendment. However, this Court is not convinced that Rowe's assignment to night classes—the action complained of in this case—was motivated by a desire of the ESJC administration to restrict activities protected by the First Amendment. Thus, this Court is unable to afford plaintiff relief.

Accordingly, it is the order, judgment and decree of this Court that all relief sought by plaintiff Rowe in this case be and is hereby denied.

It is further ordered that costs be and are taxed against the plaintiff.

---

that we were already being looked upon by the people downtown as nigger lovers."

5. The Court's disposition of this case should in no way be construed as approving what appears to be a very narrow-minded approach—on the part of President Forrester and other members of the ESJC administration—to problems of academic freedom and the critical role of the First Amendment's guarantee of free speech and open debate on a state college campus. The Court credits the testimony of Rowe that a speaker was vetoed by President Forrester solely because he was black. However, the Court is not convinced that Rowe's role in this incident played a part in his assignment to night classes.

6. Defendants also maintain that the assignment was designed to strengthen the college's night program. The evidence on this point, however, is inconclusive.

7. Plaintiff attempts to characterize this dispute as a "professional" one, involving only disagreements on general educational and administrative policies. By resorting to such a characterization, plaintiff attempts to place this relationship under the umbrella of First Amendment protection. The evidence fails to support such a conclusion. The conflict between Mr. Rowe and Mr. Howard stemmed largely from their personal disagreement as to how their department and the college should be run. It is simply not the function of federal courts to review the day-to-day disputes involving questions of routine administration that inevitably arise on a college campus. And although this Court fully recognizes that there are issues involving the formulation of education policy on the administrative level that require the protections of the First Amendment to insure vigorous and robust debate, see Hostrop v. Board of Junior College District No. 515, 471 F.2d 488, 493 (7th Cir. 1972), this case simply does not fall within that category.